# EXHIBIT 2



2004 WL 5333438

2004 WL 5333438 (Ill.Cir.) (Trial Order)

Page 1

Circuit Court of Illinois,
County Department; Chancery Division.
Cook County
James C. ZOES, Plaintiff,
v.
NORTHAMERICAN BANCARD, INC., et al., Defendants.
No. 04 CH 1614.
October 6, 2004.
Memorandum Opinion and Order

Patrick E. McGann, Judge.

Calendar 6

This Order Applies to all cases on the Attached Exhibit 1

This matter comes before the Court of the Defendant, North American Bancard to Dismiss the complaint filed by James C. Zoes. The Plaintiff's and Defendants in the cases listed the attached Exhibit 1 have agreed that the Motions and Briefs filed in this case will stand as Motions and Responses on the common issues in their respective cases and that this Court's ruling will apply to those issues. The Defendant's Motion is brought under 735 ILCS 5/2-619.1 and raises challenges to the legal sufficiency of Plaintiff's claim, as well as, asserts affirmative matter that either defeats the Plaintiff's claim or avoids its legal effect.

I. Legal Standard

A section 2-615 motion attacks the legal sufficiency of the Plaintiff's claim. The motion does not raise affirmative factual defenses, but rather alleges defects only on the face of the complaint. The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Vernon v Schuster 179 Ill. 2d 338, 344 (1997); Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 86-87 (1996). This basis is only asserted as a challenge to Count III of the Complaint.

Section 2-619 affords a means of obtaining a summary disposition of issues of law or easily proven issues of fact. Subsection (a)(9) permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating a claim."

The phrase affirmative matter encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. For that reason, it is recognized that a 2-619 (a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action much in the same way that a 2-615 motion to dismiss admits a complaint's well-pleaded facts. Kedzie & 103rd Currency Exchange v Hodge, 156 Ill. 2d 112, 115 (1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 5333438                                                                     Page 2
2004 WL 5333438 (Ill.Cir.) (Trial Order)

This basis revolves around the Defendant's challenge to the constitutionality of the Telephone Consumer Protection Act of 1991. [FN1] ("**TCPA**).

FN1. 27 U.S.C. 227 et seq.

II. Discussion

The Defendant initially adopts the arguments made by the Defendant, Charter One Bank, in its Motion to Dismiss filed in 03 CH 10965. The Court accepts that position and enters as part of the reasoning for the ultimate ruling in this matter the Memorandum Opinion and Order entered in that case. The full text of that ruling is attached as Exhibit B to this ruling. To the extent that that ruling responds to the issues raised in this Motion, the Court will endeavor to merely reference the opinion without repeating its language.

A. Commercial Speech Protection of the First Amendment

The Defendant asserts that the **TCPA** scheme results in a blanket prohibition on this form of commercial speech. Hence, it is more extensive than necessary to achieve the asserted government interest. As a result, the rights of individuals to receive unsolicited fax advertising is restricted. The Defendant points to the importance of maintaining a free and open market place of ideas so that consumers can receive as much information as desired in order to make private economic decisions. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976).

The Defendant seeks to analogize this prong of their argument to the line of decisions that prohibit restrictions on door-to-door distribution of advertising material of either a religious or commercial nature.; See, e.g. *Martin v City of Strothers, Ohio*, 319 U.S. 141, 148 (1943).

The Court recognizes that it is constitutionally improper to restrain an advertiser's access to those consumers who wish to learn about the product. This is not the goal or effect of the **TCPA**. The **TCPA** has two stated goals. The primary goal is to prevent the advertiser from shifting the cost of speech to the recipient. The **TCPA** also is designed to avoid the disruption to the orderly function of business because someone has co-opted the use of another's fax machine.

It appears to this Court that if the government can ban littering under its police power, *Turner Broadcasting v FCC*, 512 U.S. 622, 682-683 (1994), it surely can prevent the speaker's use and destruction of the listener's property without permission. Recovery under the **TCPA** is limited to those persons who did not permit or invite the facsimile message.

This unlawful taking also undermines the second prong of the Defendant's argument of this issue. The argument suggests that the "do not call" list created by Congress for telephone marketers would be a "less restrictive" and equally effective approach to the issue. As such, the **TCPA** is constitutionally infirm. The Court would suggest that if Mr. Martin, the protagonist in *Martin v City of Strother*, had entered that property in Ohio and in order to proselytize, instead of ringing a door bell and speaking to the inhabitants, he wrote a message of faith on the side of their home, a successful claim for property damage would lie.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Defendant cites to three cases in support of their argument, each is inapposite. In *Thompson v. Western States Medical Center,* 535 U. S. 357 (2002), the Court struck down a ban on advertising the availability of compound drugs. [FN2] The Court found that the Government could ban the use or sale of the equipment necessary to make large scale drug compounding economically feasible, prohibit the wholesale distribution of such drugs, or prevent the inventorying of such drugs in anticipation of orders. There the harm sought to be prevented was the large scale use and distribution of drugs that were not FDA approved. The practice had traditionally been done on a patient by patient basis and created no regulatory issues. The concern was that the widespread use of advertising would create a demand for drugs that were unnecessary or unsafe. This would create public safety issues. The Court found that the other readily available alternatives would lessen the potential danger but also give physicians and their patients access to what may have been an unknown source of treatment. Here, the governmental interest is in the promotion of commerce by preventing the shifting of advertising costs to an unwary or unwilling consumer as well as, the improper disruption of commercial activity. Congress is not regulating speech by use of the **TCPA**. Advertisers are free to use any other available medium to reach its potential customers and can obtain permission to send facsimile advertisements.

> FN2. Drug compounding is the practice of altering a FDA approved drug to meet a patient's particular need.

In *Rubin v. Coors Brewing Co.,* 514 U.S. 476 (1995), the Court struck down a prohibition against advertising the alcohol content of beer on the product's label. However. brewers were free to use this information in other forms of advertising. This was found to be an irrational approach to promoting the suggested government interests. Here, the Congress was aware of the fact that technology would allow blast faxers to have a significantly greater impact on cost shifting and business disruption.

Finally, in *Lorillard Tobacco Co. v Reilly.* 533 U.S. 535 (2001), the Court struck down an almost complete ban on truthful advertising of truthful information about smokeless tobacco. This deprived tobacco merchants access to an inexpensive mode of advertising. The cost of which would be borne by the seller and not the customer.

The **TCPA** is a regulatory scheme that is consistent with the guarantees of the First Amendment to the United States Constitution.

B. Strict Liability

Here, the Defendant asserts that the **TCPA** imposes strict liability on senders of unsolicited telephone facsimile messages. The imposition of strict liability chills the exercise of First Amendment rights. *Video Software Dealers Association v. Webster,* 968 F. 2d 684 (8th Cir. 1992). This *scienter* requirement is usually limited to criminal and quasi-criminal prosecutions in non-commercial settings. *Waters v. Churchill,* 511 U.S. 661 (1994). Here, as stated at argument *scienter* is an element of the claim. The sender must consciously make a decision to send the facsimile to an identified recipient. This act requires conscious and intentional action. The message must be selected, the recipient's number put in the machine and the message sent. Assuming the fax number is contained on a list purchased from a third party, there is no constitutional restriction on suggesting that the nature

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 5333438

Page 4

2004 WL 5333438 (Ill.Cir.) (Trial Order)

and extent of the permission be ascertained before use. Surely, a prudent merchant would have a claim against an unscrupulous entrepreneur who misled a good-faith purchaser of such a list.

The Court finds this argument unpersuasive.

C. **TCPA** and Vagueness

The Defendant suggests that the reasonable person cannot determine what conduct is prohibited, as a result the statute is unconstitutional. This lack of clear standard, the Defendants assert, "chills" the legitimate exercise of a constitutionally protected right. The argument suggests that because the right is freedom of speech, a stricter scrutiny must be applied.

The statute, it is asserted, does not give fair warning to those affected by its sanction. The Defendants assert that by granting a private right of action to any "person or entity," [FN3] Congress has impermissively caused confusion. The application of the rule of construction that the use of a general term excludes application to a specific term creates the infirmity. As a result, it is suggested, that a reasonable person, reading the **TCPA** statute would find difficulty in divining its application to a corporate entity.

   FN3. 47 U.S.C. § 227 (b) (3) (B)

This problem is exacerbated by Congress' prohibition against the "use" of telephone facsimile by a person in violation of the **TCPA** scheme. This language, it is advanced by the Defendant, limits application to the actual sender, fails to give notice of potential liability to the actual intended beneficiary of the advertisement and at whose request the transmission was made.

"[Vagueness] challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975). See United States v. Powell, 423 U.S. 87, 92-93 (1975); United States v. National Dairy Products Corp., 372 U.S. 29, 32-33, 36 (1963). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). Such a provision simply has no core." Smith v. Goguen, 415 U.S. 566, 578 (1974).

As the Defendants correctly state, the Court has consistently applied a higher standard where freedom of speech issues are involved. The First Amendment overbreadth doctrine, however, represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court. See, e.g., Broadrick v. Oklahoma. 413 U.S. 601, 610 (1973); United States v. Raines, 362 U.S. 17, 21 (1960); Ash wander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The reason for the special rule in First Amendment cases is apparent: An overbroad statute might serve to chill protected speech. First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the in terrorem effect of the statute. See NAACP v. Button,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defines the prohibited conduct in plain language. The telephone facsimile is not violative of the **TCPA** if it is sent to someone who has give prior express invitation or permission. [FN5]

    FN5. 47 U.S.C. § 227 (a) (4)

It is apparent to this Court that such terms should be given their broadest meaning. Business persons searching for opportunities to advance their profitability by reducing costs or increasing market share choose many ways to receive information from suppliers or disseminate it to customers. They also widely disseminate contact information to these entities. The circumstances surrounding the acquiring of the recipients facsimile telephone number can be explored. If an ordinary reasonable person can conclude that the information was supplied with an invitation or permission to use it for business purposes, liability under the **TCPA** will not attach. The Court can envision circumstances where even informal exchanges of information given under certain circumstances will be determined to grant permission or constitute an invitation to receive otherwise prohibited facsimile messages as a matter of law.

The **TCPA** scheme is not unconstitutionally vague.

D. **TCPA** and Constitutional Issues Related to Excessive Fines

Much of this argument is adopted from Memoranda submitted by the Defendants in the Group B Master motion. The Court has reviewed those arguments and adopts its reasoning in its decision in *Inspec Associates, Ltd. v. Charter One Bank*, 03 CH 10965. As noted above, the reasoning in that opinion is attached to this Memorandum and made a part hereof.

The more interesting argument in this area surrounds the potential aggregation of the statutory damages into massive damage awards which bear no relation to the actual harm caused. *See, e.g. State Farm Mutual Insurance Company v. Campbell*, 538 U.S. 408 (2003). The Court acknowledges that some portion of a statutory penalty is increased to encourage private enforcement of the law, thereby increasing compliance with its strictures. However, the actual impact of the aggregation cannot be measured at this time. Rather, it is suggested that such determinations are premature under the rubric of Rule 23 of the Federal Rules of Civil Procedure. *Parker v. Time Warner Entertainment Company*, 331 F. 3d 13 (2nd Cir. 2003). This appears to this Court to be the proper approach. Moreover, the concurring opinion in that case offered a solution to the dilemma posed by certifying such a class. The Defendants' brief suggests that this approach has also been taken in at least one other jurisdiction.

The Court will not dismiss the claim on this basis, but will review it as part of the class certification process, if necessary.

E. **TCPA** and the Tenth Amendment

This argument has, for the reasons stated in the Memorandum in *Inspec Associates, Ltd. v. Charter One Bank, 03 CH 1096*, been rejected. The Court stands on reasoning expressed in that opinion.

F. Illinois Consumer Fraud Act (ICFA)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This claim is dismissed for the reasons stated in *Inspec Associates, Ltd. v. Charter One Bank, 03 CH 1096*. The Court adopts that reasoning in this case. [FN6]

> FN6. In *Robinson v Toyota Motor Credit Corporation,* 201 Ill. 2d 403 (2002), the Court defined the elements of an unfair business practice. In essence, the Court adopted the three part test cited with approval in *F.T.C. v. Sperry & Hutchinson Co.,* 405 U.S. 233 (1972). Therefore, in order to measure whether a business practice is unfair, a court must consider the following factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it causes substantial injury to consumers. *Robinson,* 201 Ill. 2d at 417-418. The Court also noted that all three factors need not be met. Rather, the Court adopted the reasoning of the Connecticut Supreme Court in *Chesire Mortgage Service, Inc. v. Montes,* 223 Conn. 80, 106 (1992). That Court, in a case involving "loan churning" observed that all three criteria need not be satisfied in order to support of unfairness. Rather, a practice may be unfair because of the degree to which it means one of the criteria or because to a lesser extent it meets all three. *Chesire,* 223 Conn. at 106.
> As the claim is brought under ICFA the complaint must allege with particularity and specificity the unfair business practices of the defendants. *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482. 502 (1996). The Plaintiff's fail to recognize that in a Section 2-615 Motion, the complaint must stand on its own, thus. reference to citations issued by the FCC, reports or hearings are not relevant to the issues and will not be considered in resolving this Motion.
> There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy. First, the Criminal Code of 1961, as amended, prohibits this activity. *See,* 720 ILCS 5/26-3. Knowledge is defined by the Code in Section 5/4-5. A person acts knowingly when he is consciously aware that a result is practically certain to be caused by his conduct. 720 ILCS 5/4-5(b). There can be no question than any individual who causes a telephone facsimile transmission to occur acts knowingly. In addition, the failure of Illinois to "opt out" of the private enforcement of the **TCPA** suggests that is the public policy of Illinois as well.
> The Plaintiff's allege the conduct is oppressive, yet they allege only one or two facsimile transactions to each Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. The exhibits to the complaint show each plaintiff had a reasonable alternative to the receipt of additional messages. They could call to remove themselves from the list. This conduct does not rise to the level of oppression envisioned by the drafters of ICFA.
> The final factor requires the allegation of substantial injury to the consumer. In discussing the count alleging conversion, the Court indicated the doctrine of *de minimus non curat lex* had no application in this matter. A complete review of the movants' authorities confirms this position. No case cited involved a tort claim. They involved complaints of short redemption deposits in foreclosure cases, errors in summing damages or computing interest. The Court acknowledges that the Plaintiff's are not entitled to receive nominal or presumed damages in a claim under ICFA. *Duran v. Leslie Oldsmobile, Inc.,* 229 Ill. App. 3d 1032, 1041 (1992). There are no facts from which the Court can determine the amount of damages incurred by the suggested class plaintiff or consumers as a whole. The term "substantial" is clearly a conclusion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 5333438                                                                                                Page 5
2004 WL 5333438 (Ill.Cir.) (Trial Order)

371 U.S. 415, 433 (1963). Indeed, such a person might choose not to speak because of uncertainty whether his claim of privilege would prevail if challenged. The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted.

But the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. As was acknowledged in *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S., at 771 n. 24, there are "commonsense differences" between commercial speech and other varieties. See also id., at 775-781 (concurring opinion). Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation. See id., at 771-772, n. 24. Moreover, concerns for uncertainty in determining the scope of protection are reduced; the advertiser seeks to disseminate information about a product or service to be provided, and presumably can determine more readily than others whether the proposed speech is truthful and protected. Ibid. Since overbreadth has been described by this Court as "strong medicine," which "has been employed... sparingly and only as a last resort," *Broadrick v. Oklahoma,* 413 U.S., at 613, the Court consistently declines to apply it to professional advertising, a context where it is not necessary to further its intended objective. Cf. *Bigelow v. Virginia,* 421 U.S., at 817- 818;

Hence, the Court must first determine whether the **TCPA** regulates commercial speech rights of the Defendants or others. As oft repeated in this and the prior opinions, the statute regulates not the dissemination of information, but rather. the ability of a merchandiser to shifts the cost of doing business to a potential consumer. The **TCPA** scheme also encourages efficiency and economy in commerce by freeing important communication devices from unwanted interference. It does so only in areas of commerce. Hence, any challenge to the statute in question for vagueness or overbreath, must necessarily be limited to the claim against the Defendants as plead in the complaint. A facial challenge is not available to the Defendants.

The claims of the alleged **TCPA** violations found in the instant complaints are clear and unambiguous. This defeats the Defendants assertion that the statute is vague or overbroad.

In addition, the Congress took pains to describe some of the terms complained of by the Defendants. Indeed the term "person" is defined to be co-extensive with the common understanding of the word entity. [FN4] This renders the use of the rule of statutory construction suggested by the Movants unnecessary. Moreover, common legal principles of *respondeat superior* and aiding and abetting give reasonable notice of potential liability to merchandisers and others seeking a commercial transaction. These rules are imputed into regulatory schemes enacted by Congress. See, *Meyer v. Holley,* 537 U.S. 280, 285 (2003).

    FN4. 47 U.S.C. § 153

In their reply brief, the Defendants suggest that the vagueness issue arises in the context of identifying the circumstances under which permission to receive telephone facsimile advertising messages can be discerned. In support of this argument, they point to the rather tortured manner in which the FCC has attempted to develop regulations. While history and perhaps the Code of Federal Regulations speak volumes upon volumes on the role of the federal bureaucracy in our society, this particular argument loses sight of the fact that the **TCPA** statute clearly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Thus, evidence of only one of the *Robinson* factors are found in the Plaintiff's complaint. This Court concludes that the Plaintiff has not stated a claim under ICFA. In reaching this decision, the Court recognizes that the failure to include Illinois' prohibition against unsolicited telephone facsimile transmissions in Section 2Z of ICFA (815 ILCS 505/27, also prevents a finding of a per se violation of ICFA. *Illinois ex rel. Daley v. Grady*, 192 Ill. App. 3d 330, 332 (1989).

III. Order

A. The Motion to Dismiss the Plaintiffs' claims under the Telephone Consumer Act of 1990 is Denied. The Defendants are ordered to answer said complaints within 28 days hereof;

B. The Motion to Dismiss the claims of violatinig the Illinois Consumer Fraud and Deceptive Practices Act is granted. No Plaintiff may re-file such a claim without prior leave of Court;

C. Issues relating to Discovery will be finalized on October 14, 2004 at the scheduled hearing.

Enter: <<signature>>

NCAS
James C. ZOES, Plaintiff, v. NORTHAMERICAN BANCARD, INC., et al., Defendants.
2004 WL 5333438
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.