Commercial Speech?", 76 Va.L.Rev. 627, 634. Admittedly, the authors argue that these are distinctions without difference, this Court, however, must acknowledge and give deference to these well established principles continually enunciated by our Supreme Court.

Prior to answering the question as to whether the statute is vague by subjecting it to questions presented by hypothetical situations, the Court must determine if the defendants conduct comes clearly within the proscription of the statute. Village of Hoffman Estates v. The Flipside, Hoffman Estates, 455 U.S. 489, 495 (1981). Clearly, they do. Each facsimile message advertises the price and availability of services, such as, internet connections, long distance or cellular telephone service, or products such as packaged learning programs, toner for facsimile and other printing devices. Thus, the defendants should not be heard to complain of the statute's vagueness.

Assuming arguendo, that the Defendant's hypotheticals should be considered, the Court's analysis suggests the following resolutions. A carwash or candy sale is not conducted by a high school band for profit in the business sense of the word"commercial." A plea to oppose apartheid in the manner suggested does not advertise the commercial availability or quality of a product, nor does the announcement, without more, of an essay contest. A warning concerning the danger of a product would be subject to an affirmative defense of necessity, 720 ILCS 5/7-13, or privilege.

The availability of private enforcement of the statute does not give the theoretical plaintiffs "unrestrained power…(to) charge a person with a violation." Kolender v. Lawson, 461 U.S. 352, 359 (1983). As indicated, the statute has a clear meaning and is easily understandable by persons of common intelligence. A defendant wrongfully sued would have all remedies that are available to any person so situated.

Thus, this Court does not find the TCPA to be violative of the Due Process prohibition against a vague statute.

The defendants finally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

The Due Process Clause of the Fifth and Fourteenth Amendments prohibit federal and state governments, respectively, from imposing a "grossly excessive" punishment on a

10

tortfeasor. <u>TXO Production Corp. v. Alliance Resource Corp.,</u> 509 U.S. 443, 454 (1993). In order to make this determination, the Court must first identify the interest the government seeks to protect and then determine whether the award is grossly excessive in relation to those identified interests. <u>TXO,</u> 509 U.S. at 456.

The Court has already identified those interests as preventing the shifting of advertising costs to potential consumers and promoting the efficient operation of this nation's businesses. The Court also notes that each defendant received adequate notice of the potential penalty if their conduct deviated from the required norm. Thus, the Supreme Court's decision nullifying an award for punitive damages on the basis of lack of notice is inapposite. <u>BMW of North American v. Gore,</u> 517 U.S. 559 (1995). Unlike the situation before the Court here, BMW was not sufficiently informed that the same conduct which was acceptable in some jurisdictions, but not in others, was subject to a penalty 500 times greater than the actual loss. It is clear the penalty here is even greater, but unlike the operators of BMW who had no notice that the procedure employed ran afoul of the law in Alabama, the statute clearly proscribes the conduct before any defendant acted. Thus, the standard to be applied is more properly found in <u>St. Louis, Iron Mountain & Southern Railway v. Williams,</u> 251 U.S. 63 (1919). There the Court acknowledged the wide latitude that legislatures have in protecting public interest, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established law. This Court is wary of substituting its judgment for that of Congress. The Court is concerned about the potential damage claims in this case. However, no evidence has been introduced quantifying the amount of damages incurred by businesses in lost productivity. Thus, no mathematical certainty can be reached as to the relationship between actual damages and the penalty imposed. The defendants correctly point to the problems confronted by Judge Spears in <u>Texas v. American Blast Fax, Inc.,</u> 164 F. Supp. 2d 892 (D.C. TX. 2001). Any penalty computed by multiple violations would be a result of the defendants use of technology to aggressively violate a statute which is clear on its face. However, this issue must await full resolution until all of the evidence is heard, so a complete record can be established.

Thus, the Court does not find the TCPA imposes a sanction grossly disproportionate to the interests sought to be protected.

Turning now to the Eighth Amendment excessive fine issue. This analysis is similar to that under the prior Due Process inquiry. A fine is a valid exercise of legislative perogative unless it is grossly disproportionate to the nature of the violation. United States v. Bajakajian, 524 U.S. 321 (1998). However, as the dissent in that decision noted, substantial deference must be given legislative determination as to sanctions for illegal authority. Bajakajian, 524 U.S. at 348. As noted, on this record, this Court cannot make such a determination, thus, the Motion to Dismiss is denied. Having found the TCPA constitutional the Court moves to analyze the remaining issues.

III.    THE PLAINTIFFS MAY NOT PROSECUTE A PRIVATE RIGHT OF ACTION IN ILLINOIS COURTS

The defendant's assert that no private action for violation of the TCPA can be maintained in Illinois Courts because Congress' action in establishing private rights of action in state courts violates the Tenth Amendment to the United States Constitution, and Illinois has never authorized the prosecution of TCPA matters in its courts, providing only for criminal sanctions. The four arguments advanced by the defendants are, in this Court's opinion, summarized above.

Article VI of the United States Constitution provides that the laws of the United States made pursuant to the Constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby."

In Testa v. Katt, 330 U.S. 386 (1947), the Court was called upon to determine whether Rhode Island's courts could properly refuse to hear a claim brought under the Emergency Price Control Act. Unlike the TCPA , this law gave concurrent jurisdiction to Federal, State, and Territorial Courts to entertain these claims. The basis for the declination by the Rhode Island Courts was the traditional right enjoyed by the states to enforce penal laws of a foreign state. The Court noted that since the time of the first congress, laws have been enacted conferring jurisdiction on state courts to enforce federal penal statutes. While disputes raged over the relationship between federal and state governments during the first half of the 19th Century and ultimately, albeit temporarily were resolved by war, the Supreme Court has been predictably steadfast in holding, "If an Act of Congress given a penalty to a party aggrieved, without specifying a remedy for its enforcement,

12

there is no reason why it should not been forced, if not provided otherwise by some act of Congress, by a proper action in a State Court." Claflin v. Houseman, 93 U.S. 130, 137 (1876). Thus, in Testa, the Court dismissed as inadmissible the argument that the state's law must be consistent with the federal regulatory scheme.

In International Science and Technology Institute, Inc., v. Inacom Communications, Inc., 106 F. 3d 1146 (4th Cir. 1997), a decision relied on heavily by the defendants, after determining the TCPA granted exclusive jurisdiction for the private right of action to state courts, considered the Tenth Amendment argument. The court noted that the TCPA was enacted, in part, in response to claims by several states that efforts to curb unsolicited facsimile messages were being thwarted by the simple fact that many of these messages were traveling in interstate commerce, an area the States designated to be regulated by Congress in ratifying the U.S. Constitution. The Court then acknowledged the role of the Supremacy Clause in our constitutional structure. After expressing concern that Congress not inpermissively usurp state resources as prohibited by New York v. United States, 505 U.S. 144 (1992), the Court stated any potential conflict was avoided by allowing states to affirmatively deny access to its courts for the private prosecution of TCPA claims.

This reasoning is persuasive to this Court. This, as the Court noted, strikes a balance between the Congress' right to regulate interstate commerce and the state's right to allocate its resources to problems it deems necessary and important. The TCPA only encourages state participation in Congress' regulatory scheme. Local officials, accountable to their electors, make the decisions as to state priorities. This also recognizes the role of the Supremacy Clause in our dual sovereign form of government.

Thus, this Court finds no prohibition to the maintenance of a private right of action for violation of the TCPA in state courts because Illinois has not acted to decline jurisdiction over these matters.


IV.    CONVERSION

The Defendants have filed a Motion to Dismiss the counts of Plaintiffs consolidated complaint alleging conversion pursuant to Section 2-615 of the Code of Civil Procedure, 735 ILCS 5/2-615. A section 2-615 motion to dismiss attacks the

sufficiency of the complaint, and this Court should decide the motion only on the allegations set forth in the complaint. Schwanke, Schwanke and Assoc. v. Martin, 241 Ill. App. 3d 738, 744 (1st Dist. 1992)

All well-pleaded facts in the complaint must be taken as true with all inferences from it to be drawn in favor of the nonmovant. Curtis Casket Co. v. D. A. Brown, 259 Ill. App. 3d 800, 804 (1st Dist.1999). This Court accepts as true all well-pleaded facts, but does not need to accept conclusions or inferences which are not supported by specific factual allegations.

In their complaint, the Plaintiffs allege that the Defendants sent telephone facsimile messages to the Plaintiffs without obtaining prior permission. The complaint further alleges, prior to the initiation of the transmission, each plaintiff had purchased paper and toner for their respective use and had an immediate right to the possession and use of these items. Plaintiffs further allege that the receipt of the unsolicited facsimile message resulted in the unauthorized use of toner and paper by the defendant's which rendered these items unusable by the Plaintiffs.

To sufficiently allege conversion a plaintiff must allege: 1) the defendant's unauthorized and wrongful act of control, dominion or ownership over the plaintiff's personal property: 2) the plaintiff's right in the property: 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and, 4) the plaintiff's demand for possession of the property. Roderick Development Investment Company, Inc. v. Community Bank of Edgewater, 282 Ill. App. 3d 1052 (1996). The complaint seeks actual and punitive damages as well as an injunction against future acts of conversion.

At the outset, it must be noted that the complaint does not allege conversion of the Plaintiff's fax machine, only its paper and toner. Thus, cases such as Omnibus International, Inc. v. AT & T, 2002 Tex. App. LEXIS 8234 (TX. Ap. 2002) are inapposite. Moreover this case remains an unpublished opinion, and under Texas Law it cannot be cited as authority.

The Plaintiff's have pled the facts alleging each element of conversion. As observed earlier in this opinion, the use of a facsimile machine for the distribution of printed material shifts the recipient of the materials into the role of printer. This imposes all of

the attendant costs on an unwilling recipient. This is sufficient to allege the first three elements of the tort.

The final element, however, has not been alleged. This element is unnecessary when there is another independent act of conversion that can be shown. Jensen v. Chicago and Western Indiana R. R. Co., 94 Ill. App. 3d 915, 933 (1981). The allegations and reasonable inference clearly indicate that the paper and toner had been consumed in the process of printing the advertisements sent by or on behalf of the Defendants.

Therefore, the Court finds there are sufficient allegations to state a claim for conversion.

The Defendants assert that not withstanding the existence of a properly pled claim, any damages suffered by the proposed class representative are so inconsequential that no claim should be recognized. They opine that the cost incurred by the receipt of an individual facsimile message, including paper, is no more than eight cents.

Initially, the Court must recognize that the doctrine of *de minimus non curat lex* is usually confined to matters involving an alleged breach of contract. It is applied to avoid finding a breach where the harm caused is so slight or the damages nominal. Pacini v. Regopoulous, 281 Ill. App. 3d 274, 279 (1996). This Court also agrees that much, if not all of the Plaintiffs arguments and citations do not speak to the relevant issues. Having made these observations, however, this Court is compelled to deny the Motion to Dismiss.

Illinois and other jurisdictions recognized that where a party has established an infringement of a right, damages are presumed. Ainsworth v. Century Supply Co., 295 Ill. App. 3d 644, 649-650 (1998). This entitles a plaintiff to an award of nominal damages. In Ainsworth, the plaintiff was depicted in an advertisement for the commercial availability of floor covering products and supplies from the defendant. The use of Plaintiff's likeness was unauthorized. In his deposition, the plaintiff testified he was angered to see the commercial. In reversing the grant of summary judgment, the Court held the plaintiff was entitled to an award of nominal damages, perhaps even the value achieved by Century by taking his image for their use. Ainsworth, 295 Ill. App. 3d at 650. This presumption also arises where, as here, the claim is an intentional tort. Crosby v. City of Chicago, 11 Ill. App. 3d 625, 630 (1973).

With respect to injunctive relief, the Plaintiffs, however, have not shown their lack of an adequate remedy at law.   They can seek damages under this theory as well as the TCPA, hence, their claim for injunctive relief is dismissed with prejudice.

Similarly, the Plaintiffs claim for punitive damages is not supported by well-pled facts.  There are no allegations of fraud, actual malice, gross negligence or willfulness, beyond that to state a claim for conversion. <u>Cirrincione v. Johnson</u>, 184 Ill. 2d 109. 115-16 (1988).  Moreover, absent some proof of activity undertaken to inundate a particular recipient with telephone facsimile messages, this Court doubts such a claim will ever lie. In making this statement, the Court has considered the volume of messages modern technology permits.  Nevertheless, discovery may lead to the discovery of facts that will make such a claim viable.  Thus, subject to a Motion to Amend Pleadings, the claim for punitive damages is dismissed without prejudice.

V.    ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICE ACT

The defendants have filed a Motion to Dismiss the count seeking relief under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to Section 2-615 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-615.   They advance three arguments in support of their Motion.  First, they argue that these are insufficient factual allegations to support a claim that damages were proximately caused by the Defendants action.  In addition, they assert that the factual allegations are insufficient to support a claim that the defendants engaged in "deceptive" or "unfair" conduct prohibited by ICFA.  Finally, they note that any statutes alleged to be violated by their conduct doe not support a "per se" violation of ICFA.  The Court will analyze these arguments in the order perceived to be most useful.

Initially, it should be observed that the parties agree there are no allegations of deceptive practices.  Thus, in order to establish a claim the Plaintiffs must allege ultimate facts that show the Defendants engaged in unfair practices.  In <u>Robinson v. Toyota Motor Credit Corporation</u>, 201 Ill. 2d 403 (2002), our Supreme Court discussed the elements of such a claim.  ICFA is a regulatory remedial statute designed to protect consumers against unfair business practices and is to be liberally construed to effectuate its purpose. <u>Cripe v. Leiter</u>, 184 Ill. 2d 185, 191 (1998).

In Robinson, the Court defined the elements of an unfair business practice. In essence, the Court adopted the three part test cited with approval in F.T.C. v. Sperry & Hutchinson Co., 405 U.S. 233 (1972). Therefore, in order to measure whether a business practice is unfair, a court msut consider the following factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it casues substantial injury to consumers. Robinson, 201 Ill. 2d at 417-418. The Court also noted that all three factors need not be met. Rather, the Court adopted the reasoning of the Connecticut Supreme Court in Chesire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106 (1992). That Court, in a case involving "loan churning" observed that all three criteria need not be satisfied in order to support of unfairness. Rather, a practice may be unfair because of the degree to which it means one of the criteria or because to a lesser extent it meets all three. Chesire, 223 Conn. at 106.

As the claim is brought under ICFA the complaint must allege with particularity and specificity the unfair business practices of the defendants. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 502 (1996). The Plaintiffs fail to recognize that in a Section 2-615 Motion, the complaint must stand on its own, thus, reference to citations issued by the FCC, reports or hearings are not relevant to the issues and will not be considered in resolving this Motion.

The well pled facts, taken as true for purposes of this Motion, are set out above. There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy. First, the Criminal Code of 1961, as amended, prohibits this activity. See, 720 ILCS 5/26-3. Knowledge is defined by the Code in Section 5/4-5. A person acts knowingly when he is consciously aware that a result is practically certain to be caused by his conduct. 720 ILCS 5/4-5(b). There can be no question than any individual who causes a telephone facsimile transmission to occur acts knowingly. In addition, the failure of Illinois to "opt out" of the private enforcement of the TCPA suggests that is the public policy of Illinois as well.

The Plaintiffs allege the conduct is oppressive, yet they allege only one or two facsimile transactions to each Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. The exhibits to the complaint show each plaintiff had a reasonable alternative to the receipt of additional messages. They could call to remove

17

themselves from the list. This conduct does not rise to the level of oppression envisioned by the drafters of ICFA.

The final factor requires the allegation of substantial injury to the consumer. In discussing the count alleging conversion, the Court indicated the doctrine of *de minimus non curat lex* had no application in this matter. A complete review of the movants' authorities confirms this position. No case cited involved a tort claim. They involved complaints of short redemption deposits in foreclosure cases, errors in summing damages or computing interest. The Court acknowledges that the Plaintiff's are not entitled to receive nominal or presumed damages in a claim under ICFA. Duran v. Leslie Oldsmobile, Inc., 229 Ill. App. 3d 1032, 1041 (1992). There are no facts from which the Court can determine the amount of damages incurred by the suggested class plaintiff or consumers as a whole. The term "substantial" is clearly a conclusion.

Thus, evidence of only one of the Robinson factors are found in the Plaintiff's complaint. This Court concludes that the Plaintiff has not stated a claim under ICFA. In reaching this decision, the Court recognizes that the failure to include Illinois' prohibition against unsolicited telephone facsimile transmissions in Section 2Z of ICFA (815 ILCS 505/27, also prevents a finding of a per se violation of ICFA. Illinois ex rel. Daley v. Grady, 192 Ill. App. 3d 330, 332 (1989).

Therefore, the Count of the Complaint alleging a violation of the Illinois Consumer Fraud and Deceptive Practices Act is Dismissed.

Finally, this Court feels constrained to remark about post-argument activities of the attorneys. It is clearly within the requirements of the Illinois Rules of Professional Conduct to advise the Court of any change of law used in party's argument prior to the Court's decision on the matter. RPC 3.3. The lawyers are to be commended for their action in this regard.

However, this Court seriously doubts that the obligations imposed by that Rule grant counsel a license to present a thirty-plus page brief supporting a clients' position after arguments were closed. If the need arose, a proper motion to re-open arguments would be appropriate.

This Court, while troubled by the tactic, will regard it as overzealous advocacy and return the unsolicited but permitted telephone facsimile transmission as well as the correspondence to counsel unopened and unread.

VI.    ORDER

    A. The Motions to Dismiss the Count of the Consolidated Complaint alleging a violation of the TCPA is denied;

    B. The Motion to Dismiss the Count of the Consolidated Complaint alleging Conversion is denied;

    C. The Count of the Consolidated Complaint alleging a violation of ICFA is dismissed; the Plaintiffs are given 28 days to file an amended complaint;

    D. The Defendants shall file answer to the Counts alleging violation of the TCPA and conversion within 28 days;

    E. The matter is scheduled for case management conference on May 12, 2003 at 2:30 p.m.

DATED:_____    ENTERED:_____
                                                 Judge                 1510

## EXHIBIT A

DEFENDANTS JOINING IN
CONSOLIDATED MOTIONS TO DISMISS IN RELATED TCPA CASES

| | |
|---|---|
| 02 CH 1189 | Goldberg v. Wall Street Alert |
| 02 CH 6332 | Whiting Corp v. MSI, Y2K Marketing |
| 02 CH 6335 | Whiting Corp v. PageComm of Illinois |
| 02 CH 6336 | Whiting Corp v. Fax.Com, Inc. |
| 02 CH 6905 | Bernstein v. American Family & Bezanis |
| 02 CH 6907 | Bernstein v. New Century Mtg Corporation |
| 02 CH 6908 | Bernstein v. Fax.Com, Inc. |
| 02 CH 7329 | Hanley v. Total Wireless |
| 02 CH 7687 | Whiting Corp v. Lucas Associates |
| 02 CH 7745 | Construction v. Gersten Financial |
| 02 CH 7748 | Construction Consulting Grp v. Qwest Communications, Inc. |
| 02 CH 7824 | Construction v. PageComm of Illinois |
| 02 CH 7827 | Construction v. Superior Marketing |
| 02 CH 8362 | Phillips v. Consolidate Steel Supp |

(not joining in conversion motion because no conversion count alleged
Consolidated Steel & Supply Co.)

| | |
|---|---|
| 02 CH 8364 | Phillips v. Midco, Inc. |
| 02 CH 8641 | Elliot-Dunne v. Judicial Attorney Service |
| 02 CH 8714 | Martin v. Onstaff, Inc. |
| 02 CH 10491 | Elliot-Dunne v. Voicestream Wireless |
| 02 CH 10852 | Elliot-Dunne v. Spradling |

| 02 CH 10890 | Schlosser v. MSI Marketing |
| 02 CH 10919 | Brill v. Johnson |
| 02 CH 14653 | Block v. Covad |