EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Weiss, Sugar, Dvorak & Dusek ) | |
| ) | |
| Plaintiff, ) | 03 CH 21867 |
| ) | Judge Patrick E. McGann |
| vs. ) | Calendar 6 |
| ) | |
| Human Resource Store, Inc., et al ) | |
| ) | |
| Defendant. ) | |

### Memorandum Opinion and Order

This matter comes before the Court on the combined Motion to Dismiss pursuant to 735 ILCS 5/2-619.1 alleging grounds under Sections 2-615 and 619 (a).

I.  Legal Standard

A section 2-615 motion attacks the legal sufficiency of the Plaintiff's claim. The motion does not raise affirmative factual defenses, but rather alleges defects only on the face of the complaint. The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Vernon v Schuster* 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996).

Section 2-619 affords a means of obtaining a summary disposition of issues of law or easily proven issues of fact. Subsection (a) (9) permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating a claim."

The phrase affirmative matter encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. For that reason, it is recognized that a 2-619 (a) (9) motion to dismiss admits the legal sufficiency of the plaintiff's cause

of action much in the same way that a 2-615 motion to dismiss admits a complaint's well-pleaded facts. *Kedzie & 103rd Currency Exchange v Hodge*, 156 Ill. 2d 112, 115 (1993).

II. Well-Pled Facts

The Defendants are alleged to have sent a three-page bold faced type telephone facsimile message to the Plaintiff with neither permission nor invitation. The message offered the opportunity to attend a seminar on recruiting or hiring personnel. The opportunity to purchase video training tapes or obtain consulting services in these areas.

When the message is received by the Plaintiff's telephone facsimile machine it prints the message on the Plaintiff's paper. This allows, it is alleged, the Defendants to pass their advertising costs on to the Plaintiff. The fax contains a "memo" format message from Mr. Ruh offering consulting services, as well as, a solicitation for the purchase of the described goods and services from the Human Resource Store, Inc.

This conduct is alleged to constitute a violation of the Telephone Consumer Protection Act ("TCPA"),[1] common law conversion and a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").[2]

III. Discussion

A. Constitutional Issues

The defendants in their Motion to Dismiss the Plaintiff's claims brought pursuant to the TCPA, assert that the regulation of advertisement by telephone facsimile is unconstitutionally vague and unnecessarily impinges on freedom of speech rights granted by the First Amendment. In addition, they argue that the TCPA violates the advertiser's Due Process Rights under the Fifth and Fourteenth Amendments and imposes excessive fines in violation of the Eighth Amendment.

The Telephone Consumer Protection Act provides in relevant part: "It shall be unlawful for any person…to use any (transmitting device)…to send an unsolicited advertisement to a telephone facsimile machine."[3] The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior

---

[1] 47 U.S.C. § 227
[2] 815 ILCS 505/2 et seq.
[3] 47 U.S.C. 227 (b)(1)(c)

2

express invitation or permission."[4] Thus, the TCPA prohibits only commercial advertising.

As the statute in question seeks to regulate commercial speech, it must meet the test set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 57 (1980). Initially, it must be observed that commercial speech is different from other varieties of speech because it proposes a commercial transaction which traditionally occurs in an area subject to governmental regulation. *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 445-456 (1978). However, any regulation of such speech must be cognizant of the controlling principle that our union depends on a free enterprise economy. The allocation of societies resources depend upon a free flow of information. Thus, it is in society's interest that a free flow of information be maintained so that the consumer has enough information to make intelligent and well informed decisions. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748 (1976).

In order to maintain the balance between the limited ability of government to regulate commercial speech and the consumer's right to the full and free flow of information, the Court in *Central Hudson* adopted a four part analysis to determine the constitutionality of any proposed restriction on commercial speech. First, the court must determine whether the speech comes within the First Amendment. To be protected, such speech must concern lawful activity and not be misleading. Next, the court must determine whether the government's interest in regulating the communication is substantial. If these two tests are met, then a determination must be made as to whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve the asserted interest. *Central Hudson*, 447 U.S. at 566.

Applying this analysis to the TCPA's ban on unsolicited telephone facsimile advertising, it is clear there is no claim that any of the information distributed is misleading or promotes any illegal activity.

The Plaintiffs bear the burden of establishing that the legislation survives the remainder of the analysis. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995). The Plaintiffs and the intervening Petitioner United States of America, posit that the TCPA

---

[4] 47 U.S.C. 227(a)(4).

3

was enacted to address the substantial governmental interest of preventing the shifting of the cost of advertising to the potential consumer and the economic disruptions caused by the intrusive activity of the defendants. The Plaintiffs include this later interest under the broad umbrella of "invasion of privacy." The court's determination of substantial governmental interest is limited to these two pronouncements. This court cannot engage in supposition to find additional interests in need of protection. *Edenfield v. Fane*, 507 U.S. 761, 768 (1992). The burden of establishing these interests is not satisfied by mere speculation or conjecture. There must be a demonstration that the harms cited are real. *Edenfield*, 507 U.S. at 770-71. The evidence of the governmental interest can come from anecdotes, studies, literature published in the issue, 507 U.S. at 771-773; *See also Florida Bar*, 515 U.S. at 626-627.

The Plaintiff observes that 15 states, including Illinois, have enacted similar bans on unsolicited facsimilies. They also note that two separate Congresses held hearings on the issue. Subcommittees took testimony on the issue and members noted anecdotal information from constituents on the issue. One Congressman, Edward Mackey of Massachusetts, likened receiving an unsolicited fax to receiving "junk mail with the postage due." Private citizens from various walks of life, including the legislative counsel for the American Civil Liberties Union, noted the burden imposed on consumers by the cost shifting effect of receiving an unsolicited advertisement by telephone facsimile.

The Congress also received testimony as to the business disruption caused by this activity. Witnesses testified as to the inability to access equipment because it was occupied by an uninvited user. Evidence was also taken which indicates necessary or anticipated communications were disrupted.

There is no record of similar proceedings in the Senate. However, the bills of both Houses were reconciled in committee. The Court, without invading the separation of powers, cannot find or conjecture that anything but a complete consideration of the issues occurred when the TCPA was enacted.

In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress. The Supreme Court has recognized that Congress is better equipped than the judiciary to amass and evaluate the vast amounts of

data bearing upon legislative questions. Even in the realm of First Amendment, questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendants argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exist. *See, Missouri ex. Rel. Nixon v. American Blast Fax, Inc.*, 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders) *rev'd on other grounds, Missouri ex. rel. Nixon v. American Blast Fax, Inc.*, 2003 U.S. App. Lexis 54/69(8th Cir. 2003)(Doc. 02-2705/2707). Nothing presented by the defendants undermines the continued existence of the identified and substantial government interests.

The defendants could also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail", *Bolger v. Young Drug Products Corp.*, 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense.

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This

requires the Plaintiff to demonstrate the restriction imposed will not only advance the governmental interest, but do so to a material degree. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. This can be done in a number of ways such as direct mail or contact, solicitations in printed media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its 19th century nickname "Porkopolous," enforced an ordinance limiting news racks in order to improve community esthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993).

Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. *Greater New Orleans Broadcasting Assn. v. United States*, 527 U.S. 173 (1999).

This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry both in increased operating expenses and lost productivity, was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA. These faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as *Greater New Orleans* and *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, there was no basis to suggest the bans in those cases would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would

6

not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence than private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of unsolicited messaging was ever expressed to the Congress.

The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can…is an acceptable burden so far as the Constitution is concerned." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. at 72 quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the insipid television, or tense moment at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax allowing the recipient to notify the sender of the desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. In their Reply brief, the Defendants point to recent activity in Congress to create an "established business relationship" exception to the TCPA. This, the Court is urged to find, is evidence of a congressional recognition that the current TCPA scheme is more restrictive than necessary.

The proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." *City of Cincinnati*, 507 U.S. at 417.

7

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent.

It prohibits the advertiser from passing part of its costs on to a potential consumer. From this understanding, the Court must determine if the restriction imposed while perhaps not the single best disposition is one whose scope is in proportion to the interest served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The recent activity in the Congress is not aimed at the regulatory scheme imposed by the TCPA, but rather on the overly restrictive and conflicting implementation by the FCC. The Court noted in a recent decision[5] that the TCPA must be interpreted broadly so as to not limit legitimate speech. This requires application of the ordinary reasonable man approach to defining terms such as "express permission or invitation." That can readily be ascertained from the circumstances under which the recipient of the message or phone number used was identified. As noted in that opinion some circumstances can be considered an express permission or invitation as a matter of law.

Finally, if the Congress does change the law or redefine terms of the TCPA, the effect can be determined at that time. Any other approach would be reaction to speculation. An exercise not favored by the courts.

The defendants additionally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

---

[5] *Zoes v Banctrust* 03 CH 17879